Good morning. We have three cases on calendar that are submitted on the briefs. Those are 22-700 Antonio Aguilar Nepomuceno v. Pamela Bondi, 22-846 Melitza Martinez-Felix v. Pamela Bondi, and 23-1267 Emmanuel Martinez-Juarez. In accordance with the respective orders previously entered on the dockets of those three cases, those three cases are hereby submitted for decision on the briefs. We'll proceed to hear argument in the first case on calendar for argument this morning, which is 22-276 Marcos Fernando Duran Gonzalez v. Pamela Bondi, and we'll hear first from Ms. Bradley. You may proceed. Good morning. May it please the court. My name is Liz Bradley. I'm counsel for petitioner Mr. Marcos Duran Gonzalez. I'd like to reserve three minutes of my time for rebuttal, and I will watch my clock. Mr. Duran was twice tortured in Mexico by two different cartels and for two different reasons. Now, no one disputes that what happened to Mr. Duran rises to the level of torture, but in denying him deferral of removal under the convention against torture, the immigration agency violated its own rules by ignoring the future risk posed by the second cartel that tortured him and by refusing to consider his country-conditioned evidence. Just so that I'm clear, I thought the agency found that the first event, not the second one, which it didn't treat, did not arise to the level of past torture. Am I wrong? The BIA presumed past torture. They found that the – It presumed? Yes. Right, but the IJ found that it didn't arise to the level of torture. Am I right? Correct. That was mainly on the finding that because he didn't report it, police were not aware, and if police are not aware, they cannot acquiesce, and therefore it's not torture under the definition. But the judge made no finding that the severity of the harm did not rise to the level of torture. It mainly was on the acquiescence piece, I believe. But the CAT regulations require the agency to consider all evidence relevant to the possibility of future torture, and this court's precedent, like Quijada Aguilar, says that failure to consider and aggregate the risk of torture from alternative and distinct sources is a legal error. Now, Mr. Drone – Was your point that the IJ overlooked the 2019 – because the BIA order does mention the 2019 incident in the course of its – I think in its acquiescence discussion? There was mention of the 2019 torture, but there was no assessment of the future risk posed by the 2019 cartel that tortured him. In the IJ ruling? Yes. And the IJ ruling only assessed his future risk of torture based on his fear of being involved in drug trafficking – that relates to the 2017 torture – and based on age discrimination. The BIA similarly mischaracterized his future fear claim and says that, again, that he only fears torture because of refusing to be involved in drug trafficking and age discrimination. So neither the IJ or the BIA ever actually assessed the future risk posed by the 2019 cartel who pegged him as a rival, interrogated him as a rival, threatened to cut off his fingers and toes, beat him until he was nearly paralyzed, and left him for dead. So I want to understand the nature of your argument. I think what you're saying is the IJ never considered the risk of future torture arising out of the 2019 incident, or are you saying that the BIA never considered it? Both. But that's what I'm having trouble with, because in the BIA ruling, it's talking about the particularized threat of torture, which is future, and it does have the drug trafficking comment, but then it goes on to say, Further, the other incidents, including the 2015 and 2016 muggings and the 2019 kidnapping, were by unknown people and unconnected based on this record. The respondent, therefore, did not meet his burden to establish a particularized threat of torture. That would seem like it's taking the 2019 into account with respect to the risk of future torture. Our position is no, mainly because – That's what they did. If the IJ didn't, could the BIA make that finding? In other words, I don't see the IJ treating the 2019 one separately. So I don't know how the BIA can make a determination that the 2019 one didn't lead to – wasn't sufficient if the IJ never considered it. That's correct, Your Honor. Predictive findings of what's likely to happen in the future are findings of fact reserved solely for the immigration judge. So to the extent that the BIA made a predictive finding in the absence of an immigration judge's finding, that is impermissible fact finding precluded by the regulations. But similarly, also, even in mentioning the 2019 torture as the BIA did, if they could make predictive findings, comparing the 2019 kidnapping to those two other random muggings shows it misstates or mischaracterized the record. They never considered that this was a targeted kidnapping and torture based on him being a suspected rival. He was interrogated as a suspected rival. They also never considered that while he was recovering at his friend's house, the cartel who had his ID, who had his address, to continue to surveil his wife's house. And under quote, mischaracterizing evidence or failing to mention potentially highly probative or potentially dispositive evidence indicates that the agency just did not consider the evidence before it. I want to turn to evidence of government consent or acquiescence. And I understand that there's a there's a fight about what should have been admitted or wasn't admitted. What's your position on that? On the government acquiescence, there are two fatal flaws. First, the as a legal basis, they construed acquiescence too narrowly, emphasizing the lack of a police report. The immigration judge actually in finding no torture said that because he didn't report his attacks, there was no police official who was aware of his harm and thus he could not and did not. That's with respect to the 2017 incident, right? In other words, that's when the IJ said there was no report. He's talking about the first incident, not the 2019 one that he didn't consider. It's unclear. I believe the judge really only considered generally acquiescence. He never reported either. Well, but the IJ never looked at the second incident, did he? No, no, he never says the future. So his discussion must have been about the first incident, not filing a police report. I think that's a fair read. Another record of the BIA seems to kind of lump the two together. Just well, he never filed a report. So there's no acquiescence. The BIA only gave two reasons, lack of a report and insufficient, insufficient documentary evidence. I guess I've asked the question badly, so let me try this again. Yes. Had the country conditions evidence been admitted. And the BIA and the IJ had found that it was insufficient to establish consent or acquiescence. We have a very different case. So I'm trying to figure out what the effect of not admitting the country conditions evidence is. Well, here, the immigration judge and the BIA did not consider the country evidence at all, which alone is a reversible error under Aguilar Ramos. Had they had they admitted the evidence, the both DHS considered that it was untimely. So why is that it was untimely? We don't know. It was untimely. The immigration judge never made that finding. The BIA supplanted that filing in the absence of the immigration judge, never excluding the evidence. The immigration judge on this record just didn't see the evidence. He never acknowledged that it was submitted, never mentioned it once when he was marking the evidence. And when Mr. Jones specifically asked, hey, did you receive my country conditions? Because I noticed you didn't mention them. The immigration judge just shut him down and said, I've already reviewed all of the evidence of the record. The IJ did consider. If it was indeed late submitted evidence other than the country conditions, correct? Yes, there were three other pieces of evidence submitted after that original April deadline, which attached to his first hearing that was canceled. No, there was no objection for untimeliness. There was no mention of untimeliness by DHS or the IJ. Did the IJ ever? I don't think so. I couldn't find it in this record, but I want to be sure the IJ never. Said we're keeping the original that he extended the hearing, the hearing date twice, and the original deadline was approximately a couple of weeks before the hearing date. He never then said it all has to still be in by the original time as opposed to two weeks before. No, there was there was no specific statement that the deadline was extended, but nor was there a specific statement that the deadline held despite the hearing being twice rescheduled due to covid. Those are the three other pieces of evidence that were admitted without a beep of untimeliness or any kind of concern whatsoever. Given the BIA's finding, I guess we have to assume here that the IJ did exclude. The country conditions evidence, if I were just reading the IJs, this colloquy, I could have read it as him saying, yeah, yeah, I've considered everything. Don't worry, you don't have to remind me. But the BIA says, no, no, he excluded it is untimely. So I assume for purposes of today's proceeding, we have to assume it was excluded. I don't think that's an accurate. I would say that IJ omitted the evidence and excluding the evidence would be an actual finding in a room. That's what I'm trying to figure out. I mean, it was submitted. He said, I've considered all the evidence, even though he has this strange colloquy with with with your client. And if we only had that, I might be able to read it as I'm saying, yeah, yeah, yeah, I know you didn't mention it, but I've considered it. The difficulty is the BIA says, no, no, he properly excluded it. And so I think for purposes of this case, don't we have to assume that he excluded it? Then that's a BIA making a finding of fact that they may be wrong. They may be wrong, but I'm not sure for purposes of this case. We can conclude that he actually considered it since the BIA found that he was proper and not considering. Correct. There's no question the immigration judge did not consider the omitted country conditioned evidence. But even if we think that April deadline held, the immigration judge cannot silently exclude evidence under Madrigal. If he was going to rule and exclude the evidence, he has an obligation to state that ruling and his reasoning for the ruling on the record to afford due process and to facilitate judicial review. So we're not sitting here questioning. Did he admit it? Did he not admit it? Honestly, I believe the immigration judge just flat out did not see it. Overlooked that it was there entirely. Missed it. Missed it. If there are other questions, I will reserve my time. All right. Thank you, counsel. We'll hear now from Miss Thomas Doris on the video. Good morning. Can you hear me? Yes. May it please the court. Nicole Thomas Doris for the government. As a threshold matter, the government would like to support something that hasn't been mentioned yet, is that the position of the government is that no matter the outcome as to the merits at this juncture on the first petition for review, these cases will ultimately have to be consolidated and the government will request that the court hold this, hold the decision on the first petition until the parties can read the motion to reopen or the merits of the court's decision on the motion to reopen such that the decisions either way can be issued at the same time. That is the cleanest way for if the government wants that kind of relief, the proper way to raise that is not by an oral motion in this case, but by some written document filed appropriately with the clerk with an opportunity for the other side to respond in a timely matter. So why don't you move on to the merits of the case before us? I understand, Your Honor. And I was not trying to make the motion at this juncture and there will be something for moving on. So as to this first petition, the government's position is that ultimately petitioner did not demonstrate an ongoing risk of torture. Well, part of the problem I have is I don't you know, the BIA ruling clearly addresses the issue of future risk of torture, but I don't see where the IJ made any finding about that. Looking at the IJ's ruling, you know, it ends on page 12. It has a discussion which talks about a lot of different things. And the final sentence is thus, the court finds no evidence of past torture. And then you move on to the next page and there's one paragraph that begins with the respondent has not demonstrated a sufficient likelihood of future torture. But then the substantive analysis on the future torture issue is limited entirely to acquiescence. So I don't see where in the IJ's ruling there is even a finding about particularized risk of future torture in the IJ's ruling. And that's an issue of fact. And the BIA can't find facts. So something seems amiss here. What's your response? Well, Your Honor, yes, the immigration judge could have been clearer. But we do have on page whether he could have been clearer or not. Is there any evidence that he considered the 2019 incident in which in which the petitioner was plainly tortured? There isn't any doubt that what he suffered in the 2019 incident arises to the level of torture. And I just don't see a discussion of that at all. Well, we do have in the first whole paragraph on page 107 of the record at the end, it does seem like the immigration judge is considering the totality of his claim stating on most occasions. And again, this has to do with, as I understand you're saying, the board did assume past torture. But he said on most occasions the respondent was subsequently released and was not further harmed. And that's what I don't understand what that means. In other words, he was tortured on that occasion. And therefore, now the question is whether he faces a risk of future torture. And and there's no discussion at all of the country conditions report, which was offered to show consent or acquiescence. So I'm having difficulty figuring out how I can find that the I.J. actually made a finding of fact that there was no future risk of torture arising out of the 2019 incident. I think that that sentence, especially that I just pointed to where the judge is looking at the multiple occasions of his past or his claim. And then on the page prior, we do have I know it is a statement of the law where the judge is talking or summarizes that an applicant must be subjected to a particularized threat of torture. And these are the pages that the board sided to in in in determining that this was this finding was made. And then, of course, some affirming it. But we come back to the fundamental issue, which is the discussion of the issue of future torture, which is confined to page 13 of the ruling only refers to drug trafficking. So therefore, it doesn't discuss the 2019 incident and is then framed entirely in terms of acquiescence. So it doesn't even seem to consider the issue of future risk at all. So you have both the absence of the future risk finding and the failure to consider the 2019 with respect to that, even if it did. I understand. I think that we can take the immigration judge's decision as a whole, looking to the fact that his discussion of what happened in the past does inform a risk of future harm. And again, while it could have been more precise, we have the immigration judge discussing the entirety of his claim, making a determination that there's no likelihood it's not more likely than not that he'll be tortured in the future. What do you think the language most occasions means? There only seem to be two occasions that are asserted as past torture. So does that mean that he was he was on one of the two? Something happened, but not the second one. I just don't understand that reference. Right, Your Honor. And of course, I'm looking at it as well. And it doesn't say what you're saying. What it demonstrates is that he considered both incidents. And I'm trying to figure out how the use of the word most when there's only two suggests that he considered both of them. Well, there was also the claims of the 2015 and 2016 muggings. And so I think it could be read that reasonably read that with the muggings, with the kidnapping, with Mesa, his employer, he was released. And. Ultimately, when that was not further harmed, that could be read to go to really all of the points. Let me let me ask a question about the country conditions packet. As I understand it, at the beginning of the hearing, then the petitioners proceeding pro se, correct? Yes, Your Honor. The IJ says, all right, I want to go through all the evidence. Is that everything? And the petitioner has submitted a country conditions report. It's there someplace. In other words, he's not in his pocket. He's he's submitted it to the court. He just forgets to mention it when they go through the entire list. And then when he realizes it, he says to the IJ, gee, I think I forgot to mention the country conditions packet. And the IJ apparently, at least the BIA believes at that point, says, I'm not going to consider it. Put aside on timeliness for a second. With a pro se litigant who submitted it and it's a country conditions report. How could the IJ at that point say, well, you didn't mention it when I went through the list the first time. So I'm not going to consider it. Your Honor, again, that that is not what the board. No, the board, the board made it a factual finding of its own, which is that the submission was untimely. And I have a problem with that. But I want to put aside on timeliness for a second. I just don't understand how an IJ with a pro se litigant who submitted evidence, but simply forgot to mention it in when a list is being read to him would would then be able to say, well, you didn't say it, didn't mention it the first time through. So I'm not I'm not going to consider it. That just seems to me to be incredibly arbitrary. Again, Your Honor, the government's position is that the board I'll have to push on this one point first. The board characterized it as an untimeliness finding and for not the IJ, the BIA characterized it as untimely. I never mentioned untimeliness. Right. The board is not characterizing it that way. Again, reading that colloquy, the board is citing to the notice of appeal. The notice of appeal, again, pro se, characterizes it as the immigration judge saying that the documents were too late. And then the board characterizes that in that way. Well, you say that who characterized them as too late? The government. Correct. I'm referring to the notice of appeal by the pro se petitioner for the board saying that the immigration judge decided that my documents were too late. Right. But stop for a second. This is my problem. It seems to me what the immigration judge had said is if you mentioned them when I went through the list the first time, that would have been fine. But you didn't mention them until later on in the hearing. And that's why they're too late, not that they were submitted too late. But you didn't identify them for me as part of your evidence at the first occasion when I went through it. That's the way I read his ruling. So and it seems to me if that's his ruling, you identified them too late. It's got to be error, does it? Doesn't it? They were submitted. You have a pro se litigant who just hasn't remembered every piece of evidence as he submitted. But it's in front of the judge. It's not like it's in his pocket or in his briefcase. But as we briefed, were this court to decide that it was an error to characterize that as excluding the documents as late or to either the board's characterization or the actual exclusion? Then the government's position is that given the lack of ongoing particularized risk on the record, that even with those documents, we are not. We would be I'm sorry, we meant to consider those documents would be futile. But that's where you get into trouble with the fact that you don't, in fact, have an IJ finding of no particularized future risk. So you've got I understand that in theory that would have worked as an argument against a remand. The problem is that that's got a defect that, you know, of its own. But but going back to Judge Hurwitz's issue, I mean, what it looks to me here is not that the IJ rejected them as untimely. There just seems to be no support for that in the record because he was taking stuff that was untimely, took several other things that were untimely. He drew a distinction somehow between the one untimely ones he did accept and this one. And from all I can tell in the record, the only explanations are either he just overlooked it, which looks like an abuse of discretion. Or he just said, you know, you either mentioned it in the first list and there's no opportunity to correct. And I'm not going to consider it, which would also sound like an abuse of discretion. Tell me why that analysis is wrong. Again, we have we have both. The board or the IJ decision and the board decision in conjunction with the appeal. And what ends what we have the board doing is reading that colloquy again, as you point out, as the court has pointed out, and the parties understand, too, is that there isn't a full, I'm sorry, there isn't a. Section where the immigration judge is going into why certain documents have been admitted and particularly why the proceeding is going to now move on at that point. It just we only have that colloquy. But again, the board looks at that, characterizes it as too late. We also have a notice of appeal from the petitioner telling the board that IJ decided they were too late. And the board determining that the immigration judge did not care in that regard. And that's that's the record we have. The government's position is that that is reasonable, given that we do have the deadline, the April deadline. Again, I could go. Of course, I can't go through and tell you why I would think that certain exhibits came that came after the deadline went in and others didn't. Again, the board characterized it as an untimeliness finding and by the immigration judge, the board's not engaging in that fact finding. Should the court find that determined that characterization unreasonable, then the government's position is that while it could have been clearer, we do have the immigration judge looking to the entirety of petitioner's claim in determining that there was no particularized future risk of torture and the board affirming that. And we do have the evidence that he hasn't he has no evidence or he doesn't actually even know whether he's been targeted by anyone since he left Mexico. And given that strong evidence, the government's position is that that determination is reasonable. And with that, I see that my time is coming to a close. So without any questions, I will sit down. All right. Thank you, counsel. We'll hear about. Thank you. Thank you. I'll keep it brief. I think I just really have to two points to make whether the country conditions were overlooked or excluded. That not only is an abuse of discretion under Encarnacion and Aguilar Ramos and Cole, it is a legal error. Failure to consider country conditions, particularly in a cat case, whether you fail to see them, whether you fail to give them reason consideration is legal error. That is, per se, reversible on a particularized risk. Nuru says that evidence of past torture is the biggest indicator of a likelihood of future torture at absent any significantly changed circumstances. And we have none here. The fact that he wasn't in communication with his wife when he was indigent and pro se in immigration detention is not dispositive. If there's any continuing ongoing risk after that, he was left for dead in the desert. He went to his friend's house and found out that the cartel who had his ID, read his address, was continuing to surveil his wife's house, kept coming around, asking for him by name. That is sufficient evidence for particularized risk, ongoing risk of future torture. The lack of contact with his wife while in immigration detention is not dispositive. Are you looking for a grant and remand or just a grant? It's our position that the evidence would compel a grant of cat in this case. However, given the lack of very specific findings that are usually required by the immigration judge, I do understand it being more appropriate to remand. Does the evidence compel a finding of government consent or acquiescence? I mean, I understand there's support for an argument of consent or acquiescence in the country conditions report. But I'm not sure that the report compels that finding. I would defer to the court to that. But I do believe that whether you look at the Department of Homeland Security's country conditions that were submitted, the State Department reports, that shows there was substantial evidence of acquiescence. There was generalized widespread collusion, government collusion with cartels. This is evidence that Madrigal found compelling to show there was sufficient to establish acquiescence. INS versus Ventura establishes an ordinary remand rule that normally we can't do the agency's work for it when it's messed up. We just send it back and say, do it right. That's correct, Your Honor. That's why we well, I believe the evidence in this case clearly compels a specific finding in the absence of those findings. In the case you just mentioned, and also in Ornelas-Chavez, when the immigration agency just doesn't follow the rules, when they don't consider evidence before it, where they apply the wrong standards. It's not this court's, as Ornelas-Chavez said, it's not this court's job to then assess a cat claim in the first instance. Rather, the court generally will remand for the agency to do its job in the first instance. However, given the compelling nature of this case, giving the two past tortures and the agency's refusal to consider evidence properly submitted by a pro se respondent, if the court were to make an exception to that general rule, I think this is one of the cases that warrant it. For those reasons, we ask that the court grant the petitioner's application. All right. Thank you, counsel. The case just argued will be submitted.
judges: HAWKINS, HURWITZ, COLLINS